O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIANZ GLOBAL RISK U.S. INSURANCE COMPANY, as subrogee of the Los Angeles Department of Water & Power, <br><br> Plaintiff, <br><br> v. <br><br> GENERAL ELECTRIC COMPANY, <br><br> Defendant. | Case No. CV 09-09033 DDP (AJWx) <br><br> **Order Granting Motion to Compel Arbitration** <br><br> [Motion filed on January 15, 2010] |

Presently before the Court is Plaintiff Allianz Global Risk U.S. Insurance Company ("Allianz")'s Motion to Compel Arbitration ("Motion"). For the reasons set forth below, the Court GRANTS the Motion.

**I.   Background**

The overarching issue before the Court is whether Allianz, the insurer of a Los Angeles Department of Water and Power ("LADWP") project involving construction of an industrial power production facility, can compel General Electric Company ("GE"), the manufacturer and supplier of a steam turbine generator ("Turbine") installed in the course of the construction project, to submit to

binding arbitration.  According to Allianz, the Turbine GE provided was defective and ultimately malfunctioned.  As a result, Allianz alleges, it was forced to pay, on behalf of LADWP, the cost of major repairs.  Allianz now seeks to recover those costs – approximately $3.8 million – from GE.

LADWP and GE agreed to arbitrate all disputes arising out of the contract for sale of the Turbine.  Allianz, however, was not a party to the GE-LADWP agreement.  Another wrinkle complicates matters further; Allianz did not reimburse LADWP directly for the cost of repairs to the Turbine.  A third party, LA Power Joint Venture ("LA Power") – an insured, along with LADWP, under the operative Allianz builder's risk policy – carried out the repairs, and Allianz then made payments directly to LA Power.  GE did not agree to arbitrate any dispute with LA Power.

The other relevant, undisputed facts are as follows.

LADWP and GE entered into a contract for sale of the Turbine in February 2001.  The contract contained an arbitration clause providing that either party could submit any dispute arising out of the agreement for binding and final resolution by arbitration.  LADWP contracted with LA Power to install the Turbine at LADWP's Valley Generation Station.  LA Power is a joint venture between LADWP and Kiewit Industrial, Inc., an independent contractor.

LA Power installed the Turbine at the Valley Generation Station in Spring 2003.  According to Allianz, problems with the Turbine came to light in September 2003, and by December 2003, it had to be shut down and examined.  Upon examination, Allianz contends, workers discovered foreign objects inside the Turbine that were damaging the blades and other components.

LADWP then filed a claim with Allianz.[1] Allianz paid $3,877,354 to reimburse LA Power for the cost of repairing the Turbine. Allianz maintains that GE delivered the Turbine to LADWP <u>with</u> the foreign objects inside, in violation of the parties' contractual agreement.

Allianz filed an arbitration claim against GE on March 5, 2008. A panel of arbitrators from the American Arbitration Association (the arbitral body specified in the GE-LADWP contract) held a preliminary hearing and set a briefing schedule. GE filed a motion to dismiss, contending that Allianz's claims were not arbitrable and denying liability on the merits. The panel then stayed the action pending court-resolution of the arbitrability issue. Allianz filed a motion to compel arbitration in Los Angeles County Superior Court on November 16, 2009. On December 9, 2009, GE removed the case to this Court.[2] Allianz filed its Motion to Compel Arbitration on January 15, 2010. (Dkt. No. 24.)

**II. Legal Standard**

The Federal Arbitration Act ("FAA") provides that arbitration agreements in contracts "involving commerce" are "valid,

---

[1] LA Power purchased the policy from Allianz, and LADWP is listed as an additional insured.

[2] The Court notes that the Federal Arbitration Act, 9 U.S.C. § 1 <u>et seq.</u>, "bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis." <u>Hall Street Associates, L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, ----, 128 S. Ct. 1396, 1402 (2008). In its Notice of Removal, GE invokes both diversity and federal question jurisdiction. Because Allianz and GE are citizens of different states, and the amount in controversy exceeds $75,000, the Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (the diversity statute). GE's reliance on federal question jurisdiction, however, appears to be misplaced, as Allianz's claims do not arise under federal law.

3

irrevocable, and enforceable," 9 U.S.C. § 2, and declares "'a national policy favoring arbitration' of claims that parties contract to settle in that manner," Preston v. Ferrer, 552 U.S. 346, ----, 128 S. Ct. 978, 983 (2008) (quoting Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)).  Section 4 of the FAA provides that petitions to compel arbitration may be brought in "any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . [over] the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4.  "The 'body of federal substantive law' generated by elaboration of FAA § 2 is equally binding on state and federal courts." Vaden v. Discover Bank, 129 S. Ct. 1262, 1271 (2009).

"In determining whether parties have agreed to arbitrate a dispute, [courts in this circuit] apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996)).  "The presumption in favor of arbitration, however, does not apply 'if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision.'" Id., 555 F.3d at 1044-45(quoting In re Tobacco Cases I, JCCP 4041, 21 Cal. Rptr. 3d 875, 887 (Ct. App. 2004)).

**III. Discussion**

The right to compel arbitration stems from a contractual right, and generally, "that contractual right may not be invoked by

4

one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." Britton v. Co-op Banking Group, 4 F.3d 742, 744 (9th Cir. 1993). There are, however, exceptions to the general rule. Among the legal principles that, as a matter of substantive federal law, permit a nonparty to enforce an arbitration clause are: "'1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).

Allianz contends that the principle of equitable estoppel controls the outcome here.[3] The Second Circuit has set forth the governing law in this area as follows:

> [U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of "the relationship among the parties, the contracts they signed ..., and the issues that had arisen" among them discloses that "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004) (quoting Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001)).

---

[3] Allianz also presents an alternative basis for compelling arbitration. As LADWP's subrogee, Allianz contends, it stands in the shoes of LADWP, and accordingly, it is entitled to enforce LADWP's contractual right to arbitrate any dispute with GE arising out of the LADWP-GE contract. GE, for its part, argues that Allianz is not a proper subrogee for reasons that turn on idiosyncracies of state insurance law. Because the Court relies exclusively on equitable estoppel principles in disposing of this Motion, it does not reach the subrogation issues that the parties discuss in their briefing.

5

Allianz contends that equitable estoppel principles dictate that the Court must compel GE to submit to arbitration. In its view, the issues it seeks to litigate are bound up with issues arising out of the GE-LADWP sales contract, namely, whether the Turbine, as delivered, was defective.

The Court agrees with Allianz. As the Ninth Circuit emphasized in <u>Mundi</u>, a nonsignatory can compel a signatory to arbitrate a dispute where "'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" 555 F.3d at 1046 (quoting <u>E.I. DuPont de Nemours & Co</u>, 269 F.3d at 199)). Here the wellspring of the dispute is the Turbine GE delivered to LADWP pursuant to a contract for sale. If the Turbine was defective as delivered, then GE likely breached its contractual obligations to LADWP. That Allianz paid LA Power – on behalf of LADWP – to carry out the necessary repairs is of no consequence; the parties' dispute hinges on whether GE fulfilled its contractual duties <u>to LADWP</u>. Other related issues – whether the statue of limitations bars Allianz's claims, for example – are ancillary to the underlying breach of contract claim.

GE counters that it did not consent to arbitrate any dispute with Allianz or LA Power, and that Allianz has not paid any insurance claim <u>to LADWP</u> in connection with the alleged damage to the Turbine. Both statements are true, as far as they go, but neither establishes that equitable estoppel principles should not control. The relevant inquiry is whether the issues that Allianz, the nonsignatory, is seeking to resolve in arbitration are fundamentally intertwined with the underlying contract that GE

6

signed. See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98 (2d Cir. 1999) (holding that a signatory is estopped from avoiding arbitration with a nonsignatory "when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed"). For the reasons, explained above, the Court is persuaded that the issues are so intertwined.

GE also appears to contend that substantive federal law on enforcement of arbitration clauses, including equitable estoppel doctrine – which GE does not address in its opposition – is irrelevant. GE is mistaken on this point. See Ticknor v. Choice Hotels Int'l, 265 F.3d 931, 936 (9th Cir. 2001) ("The FAA creates a body of federal substantive law of arbitrability, enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary." (internal quotation marks and citations omitted)); Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (explaining that the question of whether a nonsignatory to an arbitration agreement can compel a signatory to submit to arbitration is answered not by state law, but by the federal substantive law of arbitrability). Although, "[s]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) (emphasis in original), federal estoppel doctrine clearly displaces any contrary state law rule here.[4]

---

[4] GE urges the Court to follow Valley Casework, Inc. v.
(continued...)

Having concluded that GE is bound to arbitrate its dispute with Allianz, the Court does not reach any of the other merits issues raised in GE's opposition brief. They are for the arbitrators to resolve.

### III. Conclusion

For the reasons set forth above, the Court GRANTS Allianz's Motion to Compel Arbitration.

IT IS SO ORDERED.

Dated: March 1, 2010

DEAN D. PREGERSON
United States District Judge

---

⁴(...continued)
Comfort Construction, Inc., 90 Cal. Rptr. 2d 779 (Ct. App. 1999). In that case, as in this one, a nonsignatory insurer sought to compel a signatory to a contract containing an arbitration clause to submit to binding arbitration on the theory that the insurer had the right, through the doctrine of equitable subrogation, to enforce its insured's contractual rights. Valley Casework, 90 Cal. Rptr. 2d at 782-84. The California Court of Appeal, without discussing equitable estoppel principles, held that the insurer, as a nonsignatory, had no standing to invoke the arbitration clause at issue. To the extent Valley Casework is inconsistent with federal equitable estoppel doctrine, the Court notes that federal law controls. The Court also notes that the only other court to address these precise issues criticized the Valley Casework court's reasoning, and came out the opposite way. See Equistar Chem., LP v. Hartford Steam Boiler Inspection & Ins. Co. of Conn., 379 Ill. App. 3d 771, 779-80 (Ct. App. 2008) (noting that "[t]he Valley court's rationale seemed to be based on a simple reluctance to expand the established list of exceptions to the rule preventing nonsignatories from invoking arbitration agreements where there was no precedent for doing so").